IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRATIA LEGER,                    :    CIVIL ACTION
                                 :    NO. 05-3741
          Plaintiff,             :
                                 :
     v.                          :
                                 :
JOANNE BARNHART,                 :
                                 :
          Defendant.             :
_____:


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          November 14, 2006


I.   INTRODUCTION

        This case involves the plaintiff Gratia Leger's decade-
long quest for Social Security benefits.  After exhausting her
administrative remedies, plaintiff filed suit in this Court,
seeking judicial review of the final decision of the Commissioner
of Social Security denying her benefits.  Following motions for
summary judgment by both parties, this case was referred to
Magistrate Judge Rice for report and recommendation on the
matter.  After thoroughly reviewing all information in the
record, Magistrate Judge Rice issued a report and recommendation
in which he recommended that plaintiff's motion for summary
judgment be denied and defendant's motion for summary judgment be
granted.  Plaintiff filed objections to the report and
recommendation.  Based on the information provided in the record,

Magistrate Judge Rice's report and recommendation, as well as
plaintiff's objections to it, the Court adopts the report and
recommendation for the reasons stated below.

II.  BACKGROUND

    A.  <u>Factual Background</u>

          Plaintiff Gratia Leger was born on May 31, 1959.  She
worked sporadically from 1989 until 1992 in a number of
positions, including bookstore assistant manager, freelance
writer, temporary office worker, telemarketer, research
assistant, and library accessor.  She has had a plethora of
injuries and medical woes dating from 1991, which have impacted
her ability to work.  In addition, since 1990, she has been in 10
motor vehicle accidents, resulting in various injuries (lumbar
sprains and strains, neck injuries, whiplash, concussion, and
minor cervical sprains and strains).  She also claims to have
sustained injuries (neck pain, left arm pain and numbness) when
she slipped and fell in a puddle of water at a Mississippi
supermarket in December 1997.

          Leger claims that two conditions in particular prevent
her from working:  fibromyalgia and vestibular dysfunction.
Fibromyalgia is an arthritis-related "syndrome characterized by
chronic pain, stiffness, and tenderness of muscles, tendons, and
joints without detectable inflammation."  Medicine.net,

Definition of Fibromyalgia,

http://www.medterms.com/script/main/art.asp?articlekey=3453 (last
visited September 14, 2006).  There are no visible signs of
fibromyalgia and there is no definitive test to diagnosis it.
Id.  Vestibular dysfunction is a disturbance of the body's
balance system in the inner ear.  Rep. & Rec. at 4.  It is
undisputed that Leger suffers from these two conditions.  Because
of the effects of these conditions, she claims that she can walk
only a half block before pain begins, stand only a couple of
minutes, and sit for approximately five minutes before the pain
sets in.

       The record is full of medical evidence, beginning from
1991 until 2003, some of which lends credence to Leger's
testimony on the seriousness of her conditions, and some which
contradicts her testimony.[1]

---

       [1]  In his thorough Report and Recommendation, Magistrate
Judge Rice outlines Leger's extensive medical history, including
the findings of at least 14 physicians and psychologists, all
with varying prognoses.  For example, Dr. Thomas Whalen, a
rheumatologist and plaintiff's treating physician for a number of
years, diagnosed Leger with cervical strains and sprains,
fibromyalgia, lumbar strains and sprains, equilibrium difficulty,
chronic fatigue syndrome, cervical and lumbar herniated disc,
osteoarthritis and vestibular dysfunction and concluded that she
would be incapable of even low-stress work.  Dr. Kenneth Shulman,
a neurologist, on the other hand, characterized her symptoms as
"inconsistent."  For a full description of each doctor's
diagnosis, see Magistrate Judge Rice's Report and Recommendation
at 5-12.

B.   <u>Procedural Background</u>

Prior to plaintiff filing suit with this Court on July 19, 2005, she pursued the applicable administrative remedies. She first sought Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 16, 1996. The state agency (Pennsylvania's Bureau of Disability Determination) denied her application for benefits, concluding that she had no severe impairments. On April 26, 1999, the Administrative Law Judge ("ALJ") remanded the case to the state agency for evaluation of Leger's mental impairment. After reconsideration of the evidence, and having found no severe physical or mental impairment, the state agency again denied plaintiff's claims on December 22, 1999.

On August 25, 2000, the ALJ conducted a hearing and heard testimony of Leger (who was represented by counsel) and a vocational expert. On November 20, 2000, the ALJ determined Leger's impairments were not severe, and again denied her benefit claims. On January 16, 2002, the Appeals Council remanded the case for further proceedings. After a second hearing, the ALJ determined that she had severe impairments but could still perform a range of light work. This determination, however, did not stand; on August 18, 2003 the Appeals Council found the ALJ failed to properly evaluate Leger's credibility and her alleged mental impairment, and again remanded the case, this time to a

4

different ALJ.

Finally, on December 8, 2003, the newly-assigned ALJ conducted a hearing at which Leger and a vocational expert testified.  The ALJ found that Leger could perform her past relevant work and was, therefore, not disabled. The complaint in the present action followed.

III. DISCUSSION

A. Legal Standard

In reviewing the Commissioner's final determination that a person is not disabled and therefore not entitled to Social Security benefits, the Court must not weigh the evidence or substitute its own conclusions for that of the ALJ.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  Instead, the Court's determination must focus on whether substantial evidence supports the Commissioner's final decision.  42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  If the ALJ's findings of fact are supported by substantial evidence, the Court is bound by those findings.  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

B. Magistrate Judge Rice's Analysis

After reviewing the ALJ's determination, Magistrate Judge Rice concluded the following, which will be discussed

below: 1) the ALJ appropriately considered Leger's subjective complaints; 2) substantial evidence supported the ALJ's finding that Leger's functional limitations resulting from her impairments would not preclude her from performing sedentary and light work; 3) substantial evidence supported the ALJ's finding that Dr. Whalen's opinion was not entitled to controlling weight; and 4) it was unnecessary for the ALJ to rely on the vocational expert's testimony.

    1.    The ALJ appropriately considered Leger's
          subjective complaints.

        The ALJ must seriously consider subjective complaints which may support a claim for benefits, especially when the complaints are supported by medical evidence.  Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Taybron v. Harris, 667 F.2d 412 (3d Cir. 1981).  In order to be considered, however, the subjective complaint must bear some relationship to the claimant's physical status, as demonstrated by objective medical findings, diagnoses and opinion.  20 C.F.R. §§ 404.1526-29. While the ALJ considered Leger's subjective complaints in this case, the ALJ found that Leger's complaints were not entirely credible.[2]

---

[2] Specifically, the ALJ stated:

        The claimant's statement concerning her

Medical evidence in the record supports the ALJ's finding that Leger's complaints were not entirely credible. Several examining doctors determined that Leger was "fully functional" and noted that her complaints were "inconsistent." Rep. & Rec. at 17-18.  In addition, all objective medical testing yielded normal results with the exception of a small central disc bulge and age-appropriate degenerative disc disease.  Rep. & Rec. at 18.

Beyond the medical evidence in the case, the ALJ noted other inconsistencies which weakened Leger's credibility.  These inconsistencies included the fact that her allegedly disabling symptoms were inconsistent with her alert, articulate, cheerful and seemingly pain-free state at the hearing.  Therefore, although the ALJ considered Leger's subjective complaints, the substantial inconsistencies between her complaints and the medical evidence merited the ALJ's conclusion that Leger's complaints were not entirely credible.

_____

> impairments and their impact on her ability to work have not been accepted in toto in light of the degree of medical treatment required, the reports of the treating and examining practitioners, the medical history, the findings made on examination, the claimant's assertions concerning her ability to work, and the claimant's own description of her activities and lifestyle.

Tr. 25.

7

2.   Substantial evidence supported the ALJ's finding
that Leger's functional limitations resulting from
her impairments would not preclude her from
<u>performing sedentary and light work.</u>

While it was undisputed that Leger was diagnosed with
fibromyalgia and vestibular dysfunction, the mere diagnosis of an
impairment does not, in and of itself, qualify the claimant for
benefits.  She must also show that functional limitations
resulting from those impairments preclude her from returning to
the workforce.  <u>Petition of Sullivan</u>, 904 F.2d 826, 845 (3d Cir.
1990).  Leger was not able to make such a showing.  On the
contrary, substantial evidence pointed to the fact that she would
be able to perform light work.  For example, on her application
for benefits, Leger stated that she did a variety of activities,
including grocery shopping, dusting and vacuuming the house,
singing in a church choir, playing the tin whistle, playing
computer games, gardening, driving, preparing simple meals,
writing professionally, visiting friends, and walking for therapy
on average of 30-80 minutes at a time, three times a week.  Rep.
& Rec. at 17.  Therefore, there was substantial evidence in the
record that she was able to perform her past relevant sedentary
and light work.

3.   Substantial evidence supported the ALJ's finding

8

that Dr. Whalen's opinion was not entitled to

<u>controlling weight.</u>

Leger argued that the ALJ afforded no weight to Dr. Whalen's opinion that she was disabled.  When supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record, a treating physician's opinion is entitled to controlling weight.  20 C.F.R. §§ 404.1527(d)(2).  If the treating physician's assessment conflicts with other medical evidence, however, then the ALJ is free to reject the treating physician's opinion, so long as the ALJ clearly explains her reasons for rejecting the assessment and makes a clear record of her decision.  <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir. 1991); <u>Rivera v. Barnhart</u>, 2005 WL 713347 at *5 (E.D. Pa. March 24, 2005) (Giles, J.).

Substantial evidence in the record supports the ALJ's finding that Dr. Whalen's opinion was not entitled to controlling weight.  Rep. & Rec. at 20.  Although Dr. Whalen was one of Leger's treating physicians, his opinion was inconsistent with the record as a whole.  Dr. Whalen's opinion was contradicted by other examining physicians, who determined that Leger was fully functional, moved with ease, retained full range of motion in her extremities, had normal strength, coordination, sensation, mood and affect, gait and station.  In fact, Dr. Whalen appears to be

9

the only treating physician that consistently found serious problems with Ms. Leger's health.[3]  Furthermore, his opinion was inconsistent with Leger's own testimony that she prepared meals, went shopping, dusted and performed a variety of other similar activities.  Therefore, the ALJ properly weighed Dr. Whalen's opinion in light of the record as a whole.

### 4. It was unnecessary for the ALJ to rely on the vocational expert's testimony.

The ALJ need only consider "vocational factors" when determining whether an individual is disabled if the claimant has first satisfied the other four factors in a five-step analysis developed by the Social Security Administration when evaluating disability claims.[4]  In this case, the ALJ determined that Leger

---

[3]  In 1997, in a form he prepared for the Commission, he described her prognosis as "poor."  Rep. & Rec. at 6.  Just one year later, another physician, Dr. McNally, described Leger's rehabilitation potential as "excellent."  Id.

[4]The five steps are summarized below:

1) If the claimant is working or doing substantial gainful activity, she/he is not disabled.  If not, proceed to Step 2.  20 C.F.R. §§ 404.1520(b), 416.920(b).

2) If the person is found to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, proceed to Step 3.  If not, the individual is not disabled for Social Security purposes.  20 C.F.R. §§ 404.1520(c), 416.920(c).

retained the residual functional capacity to return to her past relevant work.  Accordingly, she did not survive the fourth step in the five-step analysis to determine if one is disabled for Social Security purposes.  Therefore, it was not necessary for the ALJ to consider the fifth step, vocational factors.[5]

    C.    <u>Leger's Objections to the Report and Recommendation</u>

The thrust of Leger's objections to Magistrate Judge Rice's report and recommendation is her claim that the ALJ failed "to address the bulk of Dr. Whalen's findings," resulting, she contends in a reversible error.  Pl.'s Obj. at 3-4.  She argues

_____

3) If the impairment meets or equals criteria for a listed impairment(s) in Appendix 1 of subpart P of Part 404 of 20 C.F.R., then the person is disabled.  If not, proceed to Step 4.  20 C.F.R. §§ 404.1520(d), 416.920(d).

4) If the claimant cannot do the kind of work he or she performed in the past, then proceed to Step 5.  If she retains the residual functional capacity to perform past relevant work, then she is found to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).

5) The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine whether claimant is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

[5] Even if Leger did reach the fifth step of the analysis, her claim still fails.  The ALJ was not required to include Leger's limitations of chronic pain and fatigue into a hypothetical question to the vocational expert because the ALJ had previously determined, as discussed, that those limitations were not credibly established.  Rep. & Rec. at 22-23  (citing <u>Rutherford</u>, 399 F.3d at 554).

that the original ALJ, whose findings of the medical records were
incorporated by reference in the later ALJ's findings, provided a
mere cursory statement regarding Dr. Whalen's voluminous records.

Further, she contends that Dr. Whalen's opinion was
incorrectly rejected, arguing that the reason it relied heavily
on her subjective complaints is due to the limitations of
objective testing for fibromyalgia.[6]  Leger cites Morales v.
Apfel, 227 F.3d 310, 317 (3d Cir. 2000), which states that "[a]
cardinal principle guiding disability determinations is that the

_____

[6] In an apparent attempt to argue that Dr. Whalen's opinion
should not have been discredited, Leger states that Social
Security Administration promulgated ruling 99-2p is applicable
and specifically instructs the adjudicator to recontact the
individual's treating source.  Pl.'s Obj. at 2.  She claims that
SSR 99-2p was created to evaluate an individual's potential
disability status when the disability claim is based on
fibromyalgia.  However, Leger incorrectly states the purpose of
SSR 99-2p.  The purpose, as stated in the ruling itself, is to
help evaluate disability claims on the basis of Chronic Fatigue
Syndrome, not fibromyalgia as plaintiff contends.  No where in
the ruling itself is fibromyalgia mentioned; it appears in a
footnote which states that fibromyalgia shares many symptoms with
chronic fatigue syndrome.

Even if ruling SSR 99-2p is applicable to fibromyalgia
cases, it directs the ALJ to recontact the individual's treating
physician only when there is inadequate information from which to
determine the disability status of the individual.  SSR 99-2p.
In this case, there was not a lack of evidence; it was merely
that the substantial weight of the evidence contradicted Dr.
Whalen's opinion.  Furthermore, it is important to note that SSR
99-2p does not create a different evaluation process for chronic
fatigue (or fibromyalgia) cases.  Rather, it directs adjudicators
to focus on the same five step analysis previously discussed when
determining if an individual is disabled.  SSR 99-2p at
Evaluation 1 ("Claims involving CFS are adjudicated using the
sequential evaluation process, just as for any other
impairment.").

ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)).  In that case, the ALJ rejected the treating physician's opinion, not based on contradicting medical evidence, but based on his own perceptions of the claimant at the hearings.  Morales also states, which Leger did not quote, that an ALJ "may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). In this case, the ALJ's decision to not give Dr. Whalen's opinion controlling weight was based, not on the ALJ's own perception of Leger at the hearings, but on substantial contrary medical evidence.  The case is therefore, distinguishable from the facts of Morales.

     In addition, Leger argues that while the ALJ and Magistrate Judge Rice cited Leger's testimony concerning her ability to do various activities, such as gardening, shopping, dusting, etc., they ignored her testimony about how she completes these tasks.  She claims that her testimony stated that her condition negatively affects her ability to perform tasks (that she only shops as needed, vacuums only once a week, and visits

13

friends 3-4 times a month, etc.).

Finally, Leger claims that the ALJ and Magistrate Judge Rice completely disregarded her nonexertional impairments of pain and fatigue in determining whether she was disabled.  She cites Burnam v. Schweiker, 682 F.2d 456, 458 (3d Cir. 1982), to support her contention that a determination of whether an individual's nonexertional impairments preclude that person from performing past relevant work is essential.  Pl.'s Obj. at 7-8.  In Burnam, the Court considered the ALJ's determination that jobs existed in the national economy which the plaintiff could perform.  To help establish the types and number of jobs that existed in the national economy in general for claimants with exertional impairments, the Secretary of the Commission promulgated medical-vocational guidlines or "grids."  Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir 2000).  The Third Circuit in Burnam rejected the ALJ's reliance solely on the grids in that case because the grids did not establish the existence of jobs for persons with both exertional and nonexertional impairments.  Accordingly, the Burnam court held the ALJ, in analyzing the fifth factor, erred in failing to consider if work existed in the national economy based on both the exertional and nonexertional impairments of the claimant.  Id.

Burnam is not applicable to the present case.  The issue in this case is not whether work existed in the national

14

economy for someone with Leger's exertional and nonexertional impairments, but whether Leger's impairments preclude her from performing past relevant work.  Nonexertional impairments, a factor in to be taken into account in the fifth step of the inquiry, are only relevant if it is first concluded that the plaintiff lacks the residual functional capacity to perform past relevant work.  See generally Sykes, 228 F.3d at 265.  As previously discussed, substantial evidence supported the ALJ's determination that Leger could perform her past relevant work and Leger's claim did not reach the fifth and final step of the evaluative process.  Instead, she failed at the fourth step: the ALJ determined that Leger retained the residual functional capacity to return to her past relevant work.  The fourth step of the process does not require an evaluation of nonexertional impairments.  Therefore, a determination of whether other work in existed in the national economy which would have taken into account her non-exertional impairments was unnecessary.


IV.  CONCLUSION

       For the reasons set forth above, the report and recommendation is adopted and approved.  Upon review of the record, it is clear that substantial weight supported the ALJ's determination that Ms. Leger is not disabled for Social Security benefits purposes.  Because the Court is bound by the ALJ's

findings of fact if those findings are supported by substantial evidence, the ALJ's determination stands.  Accordingly, plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted.

An appropriate order follows.